1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SCOTT N. JOHNSON,

11              Plaintiff,                          No. 2:11-cv-01295 KJM KJN

12         v.

13   DAVID J. EID, individually and d/b/a
     David's Spirit; SHERRY J. EID,
14   individually and d/b/a David's Spirit,

15              Defendants.                         ORDER
     _____/
16

17              Presently before the court is plaintiff's motion for default judgment against

18   defendants David J. Eid and Sherry J. Eid ("defendants"), who are the only named defendants in

19   this action.[1]  (Mot. for Default J., Dkt. No. 15.)  Because oral argument would not materially aid

20   the resolution of the pending motion, this matter is submitted on the briefs and record without a

21   hearing.  See Fed. R. Civ. P. 78(b); E. Dist. Local Rule 230(g).  For the reasons stated below, the

22   undersigned denies plaintiff's motion for default judgment without prejudice for lack of a

23   sufficient showing of proper service of process.

24   ////

25   ////

26
     _____
          [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

I.     BACKGROUND

Plaintiff Scott N. Johnson, an attorney, initiated this action on May 13, 2011, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq.  (See generally Compl., Dkt. No. 1.) Plaintiff, who is affected by quadriplegia and uses a wheelchair and a specially configured van, alleges that defendants own, operate, manage, or lease a "gas/service station" called David's Spirit, which is located at 2395 North Texas Street, Fairfield California. (Compl. ¶¶ 1-3.)  Plaintiff alleges that defendants are liable under the ADA and Unruh Civil Rights Act because of architectural barriers to access at the business that plaintiff actually encountered, which consist of a lack of: "the correct number and type of properly configured disabled parking space(s) including the lack of a van accessible disabled parking space . . . , [an] accessible route . . . , accessible restrooms . . . , [an] accessible entrance . . . , compliant door width . . . , complaint door pressure and door handles . . . , complaint door closing speeds . . . , [and] accessibility signage and striping."  (Id. ¶ 4.)  Plaintiff alleges that the removal of these architectural barriers is readily achievable.  (Id.)  Plaintiff seeks injunctive relief and statutorily authorized money damages in an amount of $8,000 pursuant to the Unruh Civil Rights Act.  (See id. at 20-21; see also Mot. for Default J. at 4-5.)

An affidavit of service filed by plaintiff reflects that on May 31, 2011, plaintiff, through a process server, allegedly effectuated service of process on both defendants at the business address provided for David's Spirit.  (Aff. of Service filed June 10, 2011, Dkt. No. 7.) In the affidavit of service, plaintiff's process server declared that he left copies of the summons, complaint, and related documents at defendants' "usual place of abode"[2] and gave them to

---

[2]  Although the affidavit of service describes the address as "2395 N. Texas St., Fairfield, CA 94533," which is the alleged business address of David's Spirit (Compl. ¶¶ 1-3), the affidavit refers to that address as defendants' "usual place of abode" and "a residence."  (Aff. of Service filed June 10, 2011, Dkt. No. 7.)  Neither plaintiff nor his process server explains this discrepancy.

defendants' son, Jamal Eid.  (See id.)  Plaintiff's process server declared that, because the

documents were "served at a residence," therefore "no diligence or mailing [was] required."  (See

id.)  It is unclear when the process server signed the affidavit of service, as several different date

stamps appear on the document.  (Id.)

On October 7, 2011, plaintiff requested that the Clerk of Court enter default

against defendants.  (Req. for Entry of Default, Dkt. No. 8 at 1-2.)  Plaintiff filed the above-

described affidavit of service in support of his request.  (Dkt. No. 8-1.)  On October 17, 2011, the

Clerk of Court entered the default of defendants.  (Clerks Cert. of Entry of Default, Dkt. No. 11.)

In entering default, the Clerk of Court stated that it appeared from the record and papers on file in

the action that defendants were duly served with process, but failed to appear, plead, or answer

plaintiff's complaint within the time allowed by law.  (See id.)

On November 22, 2011, plaintiff filed an "amended affidavit of service."

(Amended Affidavit of Service, filed November 22, 2011, Dkt. No. 12.)  It is unclear when the

process server actually signed the "amended" affidavit of service, as several different date stamps

appear on the document.  (Id.)  However, two of the six pages of the "amended" affidavit of

service show the process server signed those particular pages on November 2, 2011.  (Id. at 3, 6.)

In any event, the "amended" affidavit consists of the original affidavit of service

with several significant changes and some additional pages.  For instance, in the "amended"

affidavit the process server removed references to having served defendants at their "usual place

of abode" or "residence" and now states that service occurred at defendants' "usual place of

business." (Compare Dkt. No. 7 with Dkt. No. 12 at 1, 3.)  The process server also added

language to the original affidavit, namely, language stating that a separate "declaration of

diligence and mailing" is attached thereto.  (Id.)  That separate declaration indicates that, back in

May of 2011, prior to leaving copies of the summons and complaint with defendants' son, the

process server made three unsuccessful attempts to "effect personal service upon" defendants.

(Id. at 2, 5.)  It appears that only *after* those three unsuccessful attempts did the process server

1  leave the documents with defendant's son on May 31, 2011.  (Id.)  The process server also

2  attaches additional pages to the "amended" affidavit suggesting that, while the process server did

3  not mail copies of the summons, complaint, and related documents to defendants at the time of

4  the substituted service upon defendants' son, the process server waited *until November 2, 2011*,

5  before completing such mailing.  (Id. at 3, 6.)

6          On February 14, 2012, plaintiff filed a motion for default judgment against

7  defendants and served a copy of the motion on defendants by U.S. mail.  (Cert. of Serv., Feb. 14,

8  2012, Dkt. No. 15 at 6.)  A review of the court's docket reveals that defendants have not

9  appeared in this action or filed a response to the motion for default judgment.[3]

10         Plaintiff's motion for default judgment seeks statutory damages pursuant to the

11  Unruh Civil Rights Act in the amount of $8,000, which consists of minimum statutory damages

12  of $4,000 for each of two actual visits to the premises in question that resulted in discriminatory

13  events.[4]  (See Mot. for Default J. at 4.)  Plaintiff also seeks injunctive relief in the form of readily

14  achievable property alterations that consist of providing the correct number and type of properly

15  configured van-accessible disabled parking spaces, an accessible route to an accessible entrance,

16  accessible restrooms, and accessibility signage and striping, all in accordance with the ADA and

17  the Americans With Disabilities Act Accessibility Guidelines contained in 28 C.F.R. Part 36.

18  (See id. at 4-5.)

19  II.    LEGAL STANDARDS

20         Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

21  party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

22  defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

23
24      [3] Plaintiff's motion represents that at some point he "was contacted by Defendant on May 31, 2011, and the Plaintiff informed Defendant David J. Eid about the architectural barriers.  The Plaintiff has not heard from either of the Defendants since then."  (Mot. for Default J. at 4.)
25
26      [4] Plaintiff is not seeking damages for two alleged instances of forgone visits to the accommodation over the past year.  (See Mot. for Default J. at 4; Compl. ¶ 4.)

4

1   automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans,

2   238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

3   (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

4   within the district court's sound discretion. Employee Painters' Trust v. Ethan Enters., Inc. 480

5   F.3d 993, 998 (9th Cir. 2007) ("We review the district court's entry of the default judgment and

6   decisions not to set aside that judgment for an abuse of discretion"); Aldabe v. Aldabe, 616 F.2d

7   1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following

8   factors:

9           (1) the possibility of prejudice to the plaintiff, (2) the merits of
            plaintiff's substantive claim, (3) the sufficiency of the complaint,
10          (4) the sum of money at stake in the action[,] (5) the possibility of
            a dispute concerning material facts[,] (6) whether the default was
11          due to excusable neglect, and (7) the strong policy underlying the
            Federal Rules of Civil Procedure favoring decisions on the merits.
12

13  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

14  disfavored. Id. at 1472.

15          As a general rule, once default is entered, well-pleaded factual allegations in the

16  operative complaint are taken as true, except for those allegations relating to damages.

17  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

18  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair

19  Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-

20  pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary

21  facts not contained in the pleadings, and claims which are legally insufficient, are not established

22  by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing

23  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh,

24  503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-

25  pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004)

26  ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default

1   conclusively establishes that party's liability, but it does not establish the amount of damages.

2   Geddes, 559 F.2d at 560.

3   III.    DISCUSSION

4          The undersigned declines to conduct an analysis of the Eitel factors in light of

5   material concerns about whether service of process was properly effectuated in this case.[5]  As a

6   preliminary matter, a court must first "assess the adequacy of the service of process on the party

7   against whom default judgment is requested."  Bricklayers & Allied Craftworkers Local Union

8   No. 3 v. Palomino, No. C-09-01589-CW (DMR), 2010 WL 2219595, at *2-3 (N.D. Cal. June 2,

9   2010) (unpublished).  It is fundamental that "[b]efore a federal court may exercise personal

10  jurisdiction over a defendant, the procedural requirement of service of summons must be

11  satisfied."  Id. (quoting Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987),

12  superseded by statute on other grounds, Futures Trading Practices Act of 1992, Pub. L. No.

13  102-546, § 211, 106 Stat. 3590, 3607-08 (1992), and also citing Direct Mail Specialists, Inc. v.

14  Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir.1988) (stating that "[a] federal court

15  does not have jurisdiction over a defendant unless the defendant has been served properly" under

16  Federal Rule of Civil Procedure 4, which requires service of summons and complaint)).

17         Because default judgments generally are disfavored, courts have required "strict

18  compliance with the legal prerequisites establishing the court's power to render the judgment."

19  Palomino, 2010 WL 2219595, at *2-3 (quoting Varnes v. Local 91, Glass Bottle Blowers Ass'n,

20  674 F.2d 1365, 1369 (11th Cir. 1982)).  Where the party seeking default judgment has not shown

21  that the defendant has been provided with adequate notice of an action, "it is inappropriate to

22  conclude that the defendant 'has failed to plead or otherwise defend'" under Federal Rule of

23  Civil Procedure 55(a).  Id. (citing Downing v. Wanchek, No. CIV S-07-1599 JAM EFB, 2009

24  WL 256502, at *3 (E.D. Cal. Jan. 30, 2009) (unpublished) (quoting  Federal Rule of Civil

25  ─────────────

26         [5]   The undersigned notes that plaintiff's perfunctory motion for default judgment does
     not address the Eitel factors.

6

1  Procedure 55(a))).

2          Here, as discussed above, plaintiff's original and "amended" affidavits of service

3  contain material differences.  For instance, the original affidavit states that service occurred at

4  defendants' place of "abode" or "residence," yet the amended affidavit states that service

5  occurred at defendants' place of "business."  (Compare Dkt. No. 7 with Dkt. No. 12 at 1, 3.)  The

6  original affidavit also states that plaintiff's process server deemed substituted service upon

7  defendants' son as complete, "no diligence or mailing required," yet the amended affidavit states

8  that the process server decided that diligence and mailing were both required after all — such

9  that the process server describes three unsuccessful service attempts apparently pre-dating the

10  substituted service upon defendants' son, *and* such that the process server found it necessary to

11  serve the documents via U.S. mail *six months later*, in November 2011.  (Compare Dkt. No. 7

12  with Dkt. No. 12 at 2-3, 5-6.)  The Clerk's Entry of Default was entered in October 2011, yet

13  plaintiff's process server completed mail service *after* that entry, i.e., in November 2011.

14          While parties are free to file amended affidavits of service, plaintiff's motion does

15  nothing to answer questions and allay concerns arising from the material discrepancies in the

16  affidavits of service filed here.[6]  Likewise, plaintiff's motion does not attempt to explain how the

17  "amended" affidavit of service — with its material changes *and* description of an additional and

18  previously-unattempted method of service (namely, service by mail) — might impact the validity

19  of the previously-entered Clerk's Entry of Default.  Plaintiff's motion does not highlight *any* of

20  the differences between the original affidavit and the amended affidavit, leaving it to the court to

21  comb through both affidavits in efforts to figure out why the "amended" affidavit was filed.

22  Plaintiff's motion does not address *any* legal authority pursuant to which plaintiff alleges service

23  ────────────

24          [6]  See e.g. Palomino, 2010 WL 2219595, at *2-3 ("The supplemental declaration
submitted by Plaintiffs' counsel . . . which indicated the [First Amended Complaint] was mailed

25  to Defendant's last known address, prompts new concerns as to whether the Court may properly
exercise personal jurisdiction over Defendant.  Plaintiffs must first demonstrate proper service of

26  the operative complaint in accordance with the requirements of the applicable Federal Rules of
Civil Procedure.")

1  was proper, and plaintiff does not offer any particular date whereby plaintiff alleges proper

2  service was complete.  Instead, plaintiff's motion addresses service of process in just three

3  sentences:

4          On October 7, 2011, the Plaintiff electronically filed a
        Request for Entry of Default against Defendants, David J.
5          Eid and Sherry J. Eid.  On October 17, 2011, a Clerk's
        Entry of Default as to David J. Eid and Sherry J. Eid, was
6          entered attached hereto as[] Exhibit B.  Also, [s]ee Docket
        Document 11 [sic].  While the Clerk's Entry of Default is
7          based upon the Summons Return[ed] Executed which was
        filed on June 10, 2011[,] [s]ee Docket Document [sic] [,]
8          [t]he correct Summons Return[ed] Executed was filed
        afterwards on November 22, 2011.  See Docket Document
9          12 [sic].

10 (Mot. for Default J. at 3-4.)  Given the foregoing discussion of the significant differences

11 between the original and amended affidavits of service, plaintiff's succinct attempt to frame the

12 amended affidavit as "correcting" the original affidavit is something of a stretch, and without

13 additional briefing the undersigned declines to accept that framing.  Given that default judgments

14 are ordinarily disfavored, see Eitel, 782 F.2d at 1472, and given that proper service upon non-

15 appearing defendants is a prerequisite to entry of default judgment, the undersigned exercises his

16 discretion to deny plaintiff's motion without prejudice to refiling.

17 IV.    CONCLUSION

18          For the foregoing reasons, IT IS HEREBY ORDERED that:

19          1.     Plaintiff's motion for default judgment (Dkt. No. 15) be denied without

20 prejudice to refiling.

21          2.     The Clerk's Certificate of Entry of Default (Dkt. No. 11) is vacated

22 without prejudice to plaintiff attempting to again obtain a clerk's entry of default.

23          3.     After obtaining a proper clerk's entry of default based upon the most up-

24 to-date affidavit of service, namely, the affidavit of service at Docket Number 12, plaintiff may

25 re-file his motion for default judgment, this time providing necessary details regarding how

26 service of process was allegedly effectuated in this case and discussing the authorities that

confirm such service was legally proper.  Should plaintiff seek to re-file his motion, plaintiff's memorandum of points and authorities should include a more detailed discussion of service of process upon the non-appearing defendants, *including* identification of the specific type of service that was ultimately effectuated, the date(s) of such service, *and* the legal authorities under which such service was completed.  For instance, if plaintiff alleges that service was effectuated through substituted service on defendants' son, plaintiff shall cite to the applicable procedural rules providing for such substituted service, and plaintiff shall describe precisely how the alleged service attempts meet all elements of the applicable rule(s) governing service.

        4.     Plaintiff frequently files motions for default judgment in this court.  In the future, every motion for default judgment filed by plaintiff shall include a detailed discussion of the factual and legal basis for the assertion that service of process was properly made.

        a.     Such discussion shall be included in a separate section of plaintiff's motions for default judgment and shall bear the heading "Service of Process: Factual Background And Legal Authority Pursuant To Which Service Was Proper."  Beneath that heading, plaintiff include the factual *and* legal bases under which plaintiff alleges service was properly effectuated.  Plaintiff shall specify the precise rule(s) providing for the method of service he alleges was completed.  Plaintiff's citations to these rules *must also include the applicable subsection* of the rule rather than a broad citation to, for example,  "Federal Rule of Civil Procedure 4."

        b.     Should plaintiff fail to include such a section in his future motions for default judgment, such motions may be summarily denied without prejudice.  The court will not comb through affidavits of service in efforts to decipher what method of service occurred; nor will the court complete plaintiff's task of determining which procedural rule(s) and subsection(s) may render service of process proper in a given case.

////

////

1          IT IS SO ORDERED.

2    DATED:  April 5, 2012

3

4                                        _____
                                         KENDALL J. NEWMAN
5                                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26